CADICK MILLING COMPANY *v.* VALDOSTA GROCERY COMPANY.

[No. 10,083. Filed February 17, 1920.]

1. SALES.—*Contracts.—Order and Confirmation.—Duty of Trial Court.*—When the clear and unambiguous meaning of a confirmation shows that it was the seller's intention to accept the order according to its terms, it is the duty of the trial court to so declare and give it that effect. p. 541.

2. SALES.—*Contracts.—Stipulation on Face of Order as to Provisions Printed on Back.—Confirmation "We Have This Day Entered Sale to You."—Effect.*—Where the order for flour contained a provision on its face concerning carrying charges, which did not appear on the face of the confirmation, and when both order and confirmation were made subject to identical terms and conditions printed on their backs, among which was a provision in effect the same, the appearance thereof on the face of the order was not at variance with the confirmation but called the seller's attention to the buyer's interpretation

of the terms printed on the back; and from the use of the words "we have this day entered sale to you" in the confirmation it may be reasonably inferred that the seller accepted such interpretation. p. 541.

3. SALES.—*Contracts.—Printed Phrases in Confirmation Blanks Inapplicable to Subject-matter.—Meeting of Minds.*—It does not show that there was no meeting of minds, where the confirmation contained printed phrases designating kinds or grades of flour, opposite which no amounts were set to indicate that any flour of the brands thus designated entered into the confirmation, it being at the same time clear upon other brands to the amount shown by the order. p. 541.

4. SALES.—*Contract.—Stipulation of Shipment Period.—Carrying Charge Thereafter.—Effect on Life of Contract.*—Where an order for flour and its confirmation alike specified the shipping period, and subsequent portions of each identically provided that if the flour sold be not ordered out within the contract shipping period, it was to be subject to a stipulated carrying charge, the contract did not terminate by the mere expiration of the named shipping period. p. 543.

5. SALES.—*Contracts.—Printed Clauses.—Disregarded When Inapplicable.*—A clause in printed forms for order and confirmation of sales, providing a rule for determining the period within which the goods must be ordered out "unless otherwise specified," must be disregarded when the order and confirmation in question affirmatively fix the shipping period. p. 543.

6. CUSTOMS AND USAGES.—*Not Controlling Against Contract Provisions.—Sales.*—Where by a fair implication arising from the provisions of the contract the requirement incumbent on the buyer as to the time of ordering out the goods sold was fixed by the contract, a general custom making a different requirement cannot be accepted as controlling in that regard. p. 546.

7. SALES.—*Failure to Deliver.—Actions for Breach.—Shipping Instructions.—Evidence.*—The seller is not in position to insist that it failed to make shipments because no shipping instructions were given, where the evidence contains a letter from the seller to its agent in the sale, admitting the receipt from the buyer of shipping instructions for future shipments to be made under the contract. p. 456.

8. SALES.—*Contracts.—Repudiation by Seller.—Action for Breach. —Seller Cannot Change Grounds of Refusal to Deliver.*—After suit brought by the buyer for breach of sale contract, the seller, who has based his refusal to make shipments solely on the ground that the contract had expired by limitation, cannot

change its position and base its refusal on another and different ground.  p. 546.

9.  SALES.—*Contracts.*—*Repudiation by Seller.*—*Shipping Instructions Thereafter.*—Where the seller repudiates the contract of sale by declaring that it had expired by limitation, it is not incumbent upon the buyer thereafter to furnish shipping instructions and specifications as provided by the contract.  p. 546.

10.  DEPOSITIONS.—*Return by Officer Taking.*—*Statutory Requirements.*—*Construction.*—Statutes relating to the return of depositions by the officer taking the same to the clerk of the court in which the action is. pending, are, as a rule, liberally construed, the prevailing object being only to preserve the purity of the deposition.  p. 547.

11.  DEPOSITIONS.—*Return.*—*Unimportant Deviations in Indorsement of Names on Envelope.*—*No Prejudice to Objecting Party.*— *Publication.*—The use of the abbreviation "Co." for "Company," "Cadwick" for "Cadick," and initials only for the Christian name of a witness, by the officer taking depositions, in his indorsement upon the envelope of transmission, not shown nor appearing to have in any way prejudiced the objecting party in the trial of the cause, *held* not to render the depositions subject to an objection to their publication, in the light of the general rule of construction of statutes governing such matters and of the express provisions of §463 Burns 1914, §447 R. S. 1881, concerning unimportant deviations from any direction relative to taking depositions.  p. 547.

12.  APPEAL.—*Briefs.*—*Excessive Damages.*—*Points and Authorities.* —*No Question Presented.*—A reference to the amount of recovery in appellant's brief in its propositions and points by the mere statement that "the assessment of recovery is too large," presents no question for consideration.  p. 548.

13.  APPEAL.—*Evidence.*—*Harmless Error.*—*Damages.*—Error, if any, in admitting evidence that could only bear on the question of the amount of damages, must be regarded as harmless when no question is presented for consideration as to the amount of recovery by appellant's brief.  p. 548.

14.  APPEAL. — *Review.*— *Damages.*— *Remittitur.*— *Evidence.*—Appellant cannot complain of the amount of recovery, where, following a remittitur, judgment was rendered within the amount shown to be due by evidence introduced by appellant.  p. 548.

15.  TRIAL.—*Reception of Evidence.*—*Cross-Examination.*—*Offer to Prove.*—An offer to prove presents no question when made in connection with an objection to a question asked on cross-examination.  p. 549.

16. TRIAL.—*Reception of Evidence.—Offer to Prove Where No Question Pending.*—No question as to exclusion of evidence is presented by an offer to prove made when no question asked the witness was pending. p. 549.

17. TRIAL.—*Reception of Evidence.—No Offer to Prove.*—No question of the exclusion of evidence is presented when no offer to prove is made in connection with a question asked. p. 549.

18. APPEAL.—*Waiver of Assignments.—Briefs.*—Errors assigned, but waived by failure to state any proposition or point with reference thereto, are not to be considered. p. 550.

From Gibson Circuit Court; *Simon L. Vandeveer,* Judge.

Action by the Valdosta Grocery Company against the Cadick Milling Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*E. M. Swan, W. C. Mason* and *Harvey Harmon,* for appellant.

*George K. Denton* and *Walton M. Wheeler,* for appellee.

BATMAN, J.—This is an action by appellee against appellant for damages on account of the breach of an alleged contract. The amended complaint consisted of three paragraphs, the first of which was dismissed by appellee before the jury retired. The second paragraph alleges that the parties entered into a certain contract by which appellee purchased of appellant 1,000 barrels of flour; that said contract consists of an order and a confirmation thereof, and is as follows: (We copy only such portions as are material to a determination of the questions presented.)

"The Cadick Milling Co.    Grandview, Ind.
                                    Nov. 10, 1914.

538     APPELLATE COURT OF INDIANA,

Cadick Milling Co. v. Valdosta Grocery Co.—72 Ind. App. 534.

Ship to Valdosta Grocery Co., at Valdosta, Ga.
Date of Shipment Nov. and Dec.
Terms net cash Arrival, draft B-L attached.
This sale is made subject to the terms and conditions printed on the back hereof, which are agreed to and are not subject to change or countermand without the consent of both parties. This order is taken subject to the confirmation of the Cadick Milling Co., Grandview, Ind."

"Valdosta Grocery Co."

Salesman: Valdosta Brok. Co.

Conditions governing sales of Flour and Feed, adopted by the Southeastern Millers' Association, November 12, 1907.

"1.   Terms: Sight draft with bill of lading attached.

2.   Unless otherwise specified, purchases must be ordered out within 30 days from date of contract, with a maximum possible limit of 90 days from date of contract.  If not so ordered out within 30 days, or within contract shipment period, flour is without notice from seller subject to carrying charges of 5c per barrel per month, or fraction thereof, and feed, 25c per ton per month or fraction thereof.  Such carrying charges become due and payable at the beginning of each 30-day period after the first 30 days of free storage, the buyer hereby agreeing to pay the same at the beginning of each 30-day period. Failure to order flour out on demand of shipping instructions at expiration of the maximum 90-day period, or to pay accrued carrying charges on demand gives seller the right to cancel contract, or resell the goods for buyer's ac-

NOVEMBER TERM, 1919.        539

Cadick Milling Co. *v.* Valdosta Grocery Co.—72 Ind. App. 534.

count.'' (Other provisions follow which are not material to the questions presented for our determination.)

"Confirmation.

Grandview, Ind. Nov. 10, 1914.

''To Valdosta Grocery Co., Valdosta, Ga.

''We have this day entered sale to you as follows:

| Bbls. | Brand | Grade | Price | Pkgs. | F.O.B. | Time of Shipment |
|-------|-------|-------|-------|-------|--------|------------------|
| 500 | Sunlight | S.R. | $5.40 | Cotton | Valdosta | Nov. and Dec. |
| 500 | Sure Bake | S.R. | 5.85 | Cotton | Valdosta | Nov. and Dec. |
| | Ca-Mi-Co. | Pat S.R. | 6.25 | Cotton | Valdosta | Nov. and Dec. |
| | Gold Dust | Patent | 5.85 | Cotton | Valdosta | |

Subject to the terms and conditions printed on the back hereof, which are agreed to.

"Cadick Milling Co.

''Salesman: Valdosta Brokerage Co.

''Conditions governing sales of Flour and Feed adopted by the Southeastern Millers' Association, November 12, 1907.'' (Here follows same provisions as quoted under same head in the order set out above, and also other provisions contained in said order, not material to the questions presented for our determination.)

It is then alleged that appellant during the months of November and December, 1914, furnished appellee under said contract 225 barrels of flour, which were duly paid for on delivery; that appellee thereafter on January 30, 1915, and again on February 6, 1915, ordered out an additional 125 barrels of the kind of flour specified in said contract, giving proper directions as to packages, but appellant refused to ship the same, and notified appellee that it would not furnish said flour, nor any further flour

under said contract, and that it considered said contract terminated; that appellant did not at any time make any demand for the payment of carrying charges, or shipping instructions; that appellee had performed all the conditions of said contract on its part to be performed, and was ready and willing at all times to take and pay for all of the flour mentioned therein, in accordance with the terms thereof; that by reason of appellant's refusal to furnish said flour it was compelled to purchase the remainder of the flour specified in said contract upon the market, at a loss of $3,000, for which it demanded judgment.

The third paragraph of amended complaint is substantially the same as the second, except that it omits any reference to any right given it by the terms of the contract to order out flour under said contract after December, 1914, and avers that, by reason of a general custom, it had a right to order out said flour at any time within a period of ninety days after January 1, 1915.

Appellant answered the amended complaint by a general denial, and also by an affirmative paragraph in which it alleged in substance that said contract was uncertain and ambiguous regarding the time and necessity of ordering out said flour, and the giving of specifications and shipping instructions with reference thereto; that, by reason of such fact, a general custom in that regard prevailed with reference to such contract, which custom appellee had failed to observe, and that appellant therefore had a right to, and did, consider and treat said contract as abandoned by appellee.

The cause was tried by a jury, which returned a verdict in favor of appellee. Appellant filed a motion for a new trial, which was overruled on appellee

NOVEMBER TERM, 1919.          541.

Cadick Milling Co. *v.* Valdosta Grocery Co.—72 Ind. App. 534.

filing a remittitur of $378.44. Judgment was thereupon rendered in favor of appellee, from which this appeal is prosecuted upon an assignment of errors which requires a consideration of the question hereinafter determined.

One of appellant's assigned errors is based on the action of the court in overruling its motion for a new trial. In this motion appellant alleges, among other things, that the court erred in giving certain instructions on its own motion, in giving certain instructions at the request of appellee, and in refusing to give certain instructions tendered by it.

The correctness of these rulings depends almost entirely on our determination of certain contentions advanced by appellant with reference to the alleged contract in suit. We will therefore first direct our attention to these contentions. The record discloses that the alleged order for flour and its confirmation were introduced in evidence and were subtantially as set out in the complaint. There was also substantial evidence introduced on the trial tending to sustain the allegation of the complaint with reference to the shipment of certain flour under the alleged contract, the subsequent refusal to furnish any more flour thereunder, and the declaration on the part of appellant that it considered the contract terminated.

It is contended by appellant that the order and confirmation in question do not constitute a binding contract, as it does not appear that there was a meeting of the minds of the parties thereto.

1-3. Appellant asserts in support of this contention that there is a material variance between the alleged order and confirmation in the following particulars: (1) The order contains the statement, "5 cents a bbl. carry charges after Dec.," which is not

in the confirmation. (2) The confirmation contains the following, "Ca-Mi-Co. Pat. S.R." and "Gold Dust Patent 5.85," which are not in the order. We cannot concur with appellant's contention in this regard. True, as appellant asserts, the order contains on its face the statement, "5 cents a bbl. carry charges after Dec.," which does not appear on the face of the confirmation, but such provision, in effect, is contained in both the order and confirmation following the signatures thereto, which we assume were among the terms and conditions printed on the back of each, and to which express reference is made on the face thereof. This being true, the statement in question found on the face of the order was not at variance with the confirmation, but merely served to call appellant's attention to the interpretation placed by it on the provisions on the back of the order, to which express reference was made. Moreover, it will be observed that the confirmation states, "We have this day entered sale to you," from which it may be reasonably inferred that appellant accepted the interpretation of appellee as to the provision on the back of the order with reference to carrying charges, as indicated by the statement on the face thereof. Nor can it be rightfully said that the words and figures, "Ca-Mi-Co. Pat. S.R." and "Gold Dust Patent 5.85," found in the confirmation, but not in the order, have the effect for which appellant contends. These words are a part of the printed form used in making the confirmation, which accounts for their presence therein. However, they can have no controlling significance, since there are no amounts set opposite the same to indicate that any flour of the brand thus designated entered into such confirmation. The clear and unambiguous meaning of the confirmation in

question shows that it was appellant's intention thereby to accept the order of appellee according to its terms, and it was the duty of the trial court to so declare and give it that effect. *Hirsch & Sons, etc., Co.* v. *Peru Steel, etc., Co.* (1912), 50 Ind. App. 59, 96 N. E. 807.

Another contention made by appellant, and to which we now direct our attention, relates to the construction to be placed on the contract with reference to when the 1,000 barrels of flour in question were to be ordered out. Appellant makes the following two-fold contention in this regard: (1) The contract, by its express provision, limits the time of ordering out such flour to the months of November and December, 1914. (2) The contract, as to the time for ordering out the flour covered thereby, is controlled by a general custom which required that such flour should be ordered out, with shipping specifications and directions, within the months of November and December, 1914. We cannot adopt either of these views. Both the order and confirmation specify a shipment period; such period is designated by the words, November and December, written on the face of each. In the subsequent portions of both the order and confirmation, which are identical, it is provided that, "unless otherwise specified, purchases must be ordered out within 30 days from the date of contract." It is obvious that this provision was inserted in the printed form to fix a limitation on the time when flour sold should be ordered out, where the contract was silent in that regard, but where the contract fixed the shipment period, such provision was to be disregarded. The contract under consideration fixed a shipment period and hence the provision quoted above is not appli-

<span style="margin">4-5.</span>

cable.  We must, however, give effect to every other provision thereof which is not wholly dependent thereon.  Passing now to the sentence following the one from which the above quotation is taken, we find that it provides that, if the flour sold is not ordered out ''within contract shipment period,'' it is to be subject to a carrying charge of five cents per barrel per month or fraction thereof.  As the shipment period in this case terminated with December 31, 1914, it follows by the express terms of the contract that carrying charges would begin to accrue from that date, which would be wholly inconsistent with the theory that the contract terminated on that date, and appellant was thereafter under no obligation to make shipment of such flour.  The fact that the clause under consideration expressly provides for carrying charges after the expiration of the *contract shipment period* shows conclusively that its application is not limited to cases where there has been a failure to fix a shipment period, but applies in all cases whether a shipment period has or has not been fixed.  To adopt appellant's contention would require that we refuse to attach any significance to the phrase ''within contract shipment period,'' as found in both the order and confirmation in connection with the provisions relating to carrying charges, which we are not permitted to do under the well-established rules relating to the construction of contracts.  *Kann* v. *Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513.  On the other hand, to give it the effect we have indicated leads us to a reasonable construction of that part of the contract under consideration, and removes a difficulty in arriving at the intention of the parties which would otherwise exist.  The conclusion we have reached in this regard

finds support in the case of *Hopkinsville Milling Co.* v. *Gwin* (1912), 179 Ala. 472, 60 South. 270, but is in conflict with the later case of *Caddick Milling Co.* v. *Moultrie Grocery Co.* (1918), 22 Ga. App. 524, 96 S. E. 583, cited by appellant. However, we find ourselves unable to follow the latter case, as the better reason leads us to a contrary conclusion. Our opinion in this regard is confirmed by the fact that the evidence shows that on January 14, 1915, fourteen days after appellant now claims its contract with appellee had expired by limitation of time, it wrote a letter to the Valdosta Brokerage Company, the broker making the sale covered by the contract, in which it stated:

> "We have a letter from the Valdosta Grocery Company dated January 8th, instructing us to see that all future shipments for them be routed Ga. South. and F. L. A. Rwy. at Macon, and we will route according to their instructions unless they instruct us otherwise, and would be very glad if you will let this routing stay as it is now entered so that all shipments will go according to their instructions in the future."

In view of the context of this letter, and the circumstances under which it was written, it is reasonable to infer that the reference made therein to future shipments referred to future shipments to be made under the contract in suit, and that appellant thereby recognized that it was still in force on the date on which said letter was written, contrary to the position it now assumes in that respect.

It is obvious from reading the contract that it was incumbent upon appellee to order out the flour covered thereby, with shipping specifications and instruc-

546    APPELLATE COURT OF INDIANA,

Cadick Milling Co. *v.* Valdosta Grocery Co.—72 Ind. App. 534.

tions, within the life of the contract, but until the contract had expired by limitation, or had been terminated according to its provisions, it was optional with appellee when this should be done. This was true, not because of any custom, but by a fair implication arising from the provisions of the contract itself. It follows that the general custom alleged by appellant could not be accepted as controlling in that regard. We do not believe appellant is in a position to insist that it failed to ship the flour because no shipping instructions had been given ,in view of the letter written by it to the Valdosta Brokerage Company, on January 14, 1915, a portion of which is quoted above. Moreover, appellant did not base its refusal to ship the flour on the ground that shipping specifications and instructions had not been given, but based its refusal to make such shipment solely on the ground that the contract in suit had expired by limitation. In view of this fact appellant may not, after suit is brought for a breach of the contract, change from its former position, and base its refusal to ship such flour on another and different ground. *Aetna Ins. Co.* v. *Shryer* (1882), 85 Ind. 362; *Union Frat. League* v. *Sweeney* (1916), 184 Ind. 378, 111 N. E. 305. It follows as a matter of course that, after appellant had repudiated the contract by declaring that it had expired by limitation, it was not incumbent on appellee thereafter to furnish further shipping specifications and instructions. *Cleveland, etc., R. Co.* v. *Anderson Tool Co.* (1913), 180 Ind. 453, 103 N. E. 102, 49 L. R. A. (N. S.) 749, Ann. Cas. 1916B 1217.

The rulings of the court with reference to the giving and refusing to give instructions in the main involve the questions considered above, and are in

harmony with the conclusions we have announced. We have examined all these instructions in the light of the objections urged against them, and find no reversible error in the action of the court in giving or refusing to give any of them.

Appellant contends that the court erred in overruling its objections to the publication of the depositions of the witnesses Birdsey, Curry and Wisenbaker. It bases this contention on the fact that the indorsement of the envelope inclosing the depositions contains the abbreviation "Co." in the names of both appellant and appellee, instead of the word "Company," that the word "Cadwick" appears in appellant's name instead of the word "Cadick," and that the Christian name of the witness Birdsey is designated only by initials. Section 447 Burns 1914, §431 R. S. 1881, provides that: "The officer taking the deposition shall seal up the same in a sufficient paper envelope, and direct the same to the clerk of the court in which the action is pending, indorsing on the envelope the names of the parties and of the witnesses whose depositions are enclosed." Statutes of this kind, as a rule, have been liberally construed, the prevailing object being only to preserve the purity of the deposition. Hence a substantial compliance has been held to be sufficient. 6 Ency. Pl. and Pr. 535; 18 C. J. 715. It is provided in this state that: "An unimportant deviation from any direction relative to taking depositions shall not cause any deposition to be excluded, where no substantial prejudice would be done to the opposite party." §463 Burns 1914, §447 R. S. 1881. It appears that appellant was represented by an attorney at the taking of the depositions in question, who cross-examined the witnesses; that the depositions

were placed in an envelope, and were sealed and directed to the clerk of the court where the cause was pending; that a good-faith attempt was made to indorse the envelope with the names of the parties and witnesses; and that the depositions reached the proper court and were ordered published in the proper cause. Appellant has failed to point out in what way he was prejudiced in the trial of the cause by the action of the court in overruling his objections to the publication of such depositions, and our consideration of the question has failed to disclose any. We therefore conclude, in the light of the general rule, as well as the express provision of our statute, that appellant's contention in this regard is not well taken.

Appellant has predicated error on the action of the court in admitting certain evidence given by the witnesses Birdsey, Curry, Wisenbaker and Dalton. The only evidence of these witnesses to which appellant makes any reference in his propositions or points relates to the values of flour on January 30 and February 6, 1915, and could only bear on the amount of damages sustained by appellee. Appellant in its motion for a new trial has assigned as one of the reasons therefor that the assessment of the amount of recovery is erroneous, being too large, but in its brief has waived such assignment by failing to direct any point thereto, as the rules require. The only reference made to this. assignment in its propositions or points is the mere statement that "the assessment of recovery is too large." This is not a compliance with the rules governing the preparation of briefs with reference to statements of propositions or points, and presents no question for our consideration. *Evans-*

NOVEMBER TERM, 1919. 549

Cadick Milling Co. *v.* Valdosta Grocery Co.—72 Ind. App. 534.

*ville, etc., R. Co.* v. *Hoffman* (1918), 67 Ind. App. 571, 118 N. E. 151, and authorities there cited. Under such circumstances, the error, if any, in admitting such evidence must be regarded as harmless. *Chesapeake, etc., R. Co.* v. *Perry* (1918), 66 Ind. App. 532, 118 N. E. 548, and authorities there cited. However, in this connection we may add that appellant is not in a position to complain of the assessment of the amount of recovery, since, by the remittitur entered by appellee, the judgment rendered against it is within the amount shown by the evidence introduced by appellant itself to be due in the event there was a contract and a breach thereof as alleged.

Appellant assigned as one of its reasons for a new trial that the court erred in refusing to permit it to ask the witness Dalton on cross-examination "if he did not state to members of defendant company, at Grandview, Indiana, in the early part of the year 1915, that he knew the contract had expired, but that he would like to get some more flour on that contract, and came to see if he couldn't talk them out of same." An examination of the record fails to disclose that any such question, either in the form stated or in substance, was asked the witness on cross-examination. It appears that after appellant had asked the witness a certain question on cross-examination, and appellee had objected thereto, appellant made an offer to prove, which covered the subject-matter stated above, but this offer presents no question, since it was made in connection with an objection to a question asked on cross-examination.

Appellant also complains because the witness Cadick was not permitted to testify to certain facts with reference to appellant's exhibit No. 1, as shown on pages 173 and 179 of the record. An exam-

ination of these references discloses that no offer to prove was made in connection with the question appearing on the first-named page, and that no question was pending when the offer found on the last-named page was made. Under the circumstances no question as to the exclusion of such evidence is presented. Complaint is also made of the rulings of the court in excluding the evidence of the witness Cadick with reference to certain customs. In view of what we have heretofore said with reference to the contract in suit, it is apparent that such evidence was not proper, and that the court did not err in excluding the same.

Other errors assigned have been waived by a failure to state any proposition or point with reference thereto, and are therefore not considered.

We find no reversible error in the record. Judgment affirmed.